[S. F. No. 9162.   Department One.—July 19, 1920.]

In the Matter of the Estate of THOMAS PRATHER, Deceased. CORBET & SELBY, Respondent, v. EDSON F. ADAMS, Executors, etc., Appellant.

[1] CONTRACT—EMPLOYMENT OF ATTORNEYS—EVIDENCE.—Where the terms of employment of a firm of attorneys were arranged by correspondence, evidence as to what the parties had in mind at the time the letters were written was inadmissible for the purpose of varying the terms of the writings.

[2] ID.—WRITINGS—INTENTION OF PARTIES—RULE OF CONSTRUCTION. The meaning of the parties to a contract evidenced by letters is to be determined by the language of the writings read in the light of the surrounding circumstances.

[3] ATTORNEY'S FEES—SERVICES IN ALL NECESSARY LITIGATION—CONSTRUCTION OF CONTRACT.—Where an executor employed a firm of attorneys in pending litigation to recover property transferred by the deceased shortly before his death, their agreement that a stipulated fee should cover "all the necessary litigation" included not only services in pending litigation, but all litigation necessary to accomplish the object for which the pending actions had been brought, and they were therefore not entitled to additional compensation for services rendered in a subsequent action wherein the property was recovered.

[4] ID.—LEGAL SERVICES IN APPELLATE COURT—FIXING OF AMOUNT— QUESTION FOR PROBATE COURT.—The question as to the proper amount to be allowed for legal services rendered an executor in the

---

3. Liability of estate to attorney employed by executor or administrator, note, 25 L. R. A. (N. S.) 72.

appellate court is one to be determined by the probate court, and its decision cannot be disturbed unless it plainly appears that the allowance was without justification.

[5] ID.—ALLOWANCE NOT EXCESSIVE.—An allowance of four thousand five hundred and fifty dollars for legal services rendered an executor on appeal is not unreasonable where the final result of such services was to transform a judgment against the executor into one for him and to enable the executor on execution to acquire property of the debtor worth about forty thousand dollars.

APPEAL from an order of the Superior Court of Alameda County fixing compensation for legal services rendered an executor. W. M. Conley, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. P. O'Brien for Appellant.

Redman & Alexander for Respondent.

OLNEY, J.—This is an appeal by the executor of the will of Thomas Prather, deceased, from an order in probate fixing certain sums as the compensation to which the respondents, a firm of attorneys, are entitled for legal services rendered the executor, and directing their payment. The facts are:

The decedent, Thomas Prather, shortly before his death transferred to his brother, Samuel Prather, a large amount of his property. The appellant, upon his appointment as executor and before the employment of the respondents, brought a number of suits to recover the property so transferred. Three of these suits were brought in the superior court of San Francisco and others elsewhere. One of the San Francisco suits was to recover an open book account of some one hundred and twelve thousand dollars due the decedent from the Merced Stone Company. The theory of this action was that the transfer was a gift and had not been completed so as to pass title before the decedent's death. The other suits were on the theory that the transfers were invalid because of the incompetency of the decedent and the undue influence upon him of his brother.

After these suits had been brought, but before any of them had been tried, the respondents were employed. The terms of their employment were arranged by correspondence between them and what may be described as the attorney

for the estate, that is, the attorney having general charge of the legal affairs of the estate. After one of the respondents, Mr. Corbet, had been interviewed by the attorney for the estate, Mr. Snook, and the papers in the pending actions had been placed in Mr. Corbet's hands, he wrote Mr. Snook on December 31, 1913, as follows (the italics being ours) :

"Confirming our understanding as to the fee to be paid to our firm for services in connection with *the pending litigation* in the City and County of San Francisco in which Edson F. Adams, as executor, is the plaintiff, the amount thereof is $5000. This to be paid by Mr. Adams."

To this Mr. Snook replied, under date of January 8, 1914 (the italics again being ours) :

"In reference to your letter of the 31st ult. regarding your understanding of our agreement for services, I do not think your letter is quite specific enough in the matter of your services in the Prather Estate. I told Mr. Adams that your service charge included *all the necessary litigation* in the Superior Court of the City and County of San Francisco, and also that you would respond when your services would be needed to assist outside of San Francisco in the cases now pending.

"I would also suggest that your charge should be made against the Prather Estate, the same to be guaranteed by Mr. Adams."

The next day Mr. Corbet replied (the italics being ours) :

"My understanding with Mr. Adams, through you, about my charge for services—$5000, includes *the necessary litigation* in the Superior Court of the City and County of San Francisco; and, further, I will assist you when needed outside of San Francisco in all of the cases now pending.

"This is to be a charge against the Prather Estate, payment of same to be guaranteed by Mr. Edson F. Adams."

Following this exchange of letters, Mr. Corbet examined into the matters committed to him, and advised that he believed a recovery could be had in the action against the Merced Stone Company, but that none could be had in the other actions, based as they were on the theory of incompetence and undue influence; that, however, he believed the transfers attacked could be set aside as in fraud of the decedent's creditors, and advised the bringing of such an action. This was done and the action so brought is referred to in the present litigation as the creditors' suit, meaning not that it

was brought by the decedent's creditors, but by the executor
on behalf of the creditors. Pursuant to the advice of Mr.
Corbet, the action against the Merced Stone Company and
the creditors' suit were brought to trial and resulted, after
appeal, in a judgment in each case in favor of the executor.
Mr. Corbet had charge of and conducted both actions, both
in the superior court and on appeal. The actions pending
in the San Francisco court at the time of Mr. Corbet's em-
ployment other than the one against the Merced Stone Com-
pany were not prosecuted, and were finally dismissed with-
out trial. The soundness of his advice that a recovery could
not be had in them, but that the result desired, the recovery
of the property transferred, could be had in the creditors'
suit, was demonstrated, not only by the success of the latter,
but by the fact that one of the actions in another county on
the theory of incompetency and undue influence was tried
and lost.

The two judgments in favor of the executor obtained by
Mr. Corbet resulted in the recovery for the estate of a very
considerable amount of property. There is a sharp dispute
as to just how much its value was, but it is evident it had
substantial value. The mere statement of the character of
the litigation is enough to indicate to any lawyer of expe-
rience that it was difficult and required time, attention, and
ability for its successful prosecution, and that the services
of Mr. Corbet were of decided value.

Under the foregoing circumstances the respondents asked
that, in addition to the five thousand dollars called for by
their exchange of letters with Mr. Snook, they be allowed
compensation for their services on appeal in the action against
the Merced Stone Company, and for their services both in
the superior court and on appeal in the creditors' suit.
The probate court allowed them $4,550 because of the first
item, and three thousand six hundred dollars because of the
second, making in the latter case no apportionment as be-
tween services rendered in the superior court and those
rendered on appeal. The appeal of the executor is, as to the
first item, on the ground that the amount allowed is exces-
sive, and as to the second item, on the ground that nothing
should have been included for services in the creditors' suit
in the superior court because such services came under the
contract for five thousand dollars.

[1] Taking up the second point first, it turns, of course, on the proper construction of the letters between Mr. Corbet and Mr. Snook, which evidence the terms upon which the respondents were employed. Much testimony was introduced as to what the parties had in mind when they wrote these letters. We do not understand upon what theory such testimony was offered or received or may be considered by us. It certainly cannot be received or considered for the purpose of varying the terms of the writings. [2] As to construing those writings, it is certainly also the primary rule of construction that the meaning of the parties is to be determined by the language of the writings read in the light of the surrounding circumstances. It is also the rule that with the exception of a single class of cases, of which the present is not one, testimony either by the parties themselves as to what they intended, or as to declarations of intention made by them at the time, is wholly incompetent.

Reading the letters in the light of the situation as it existed when they were written, we find ourselves unable to avoid the conclusion that they cover the services rendered by the respondents in the creditors' suit in the superior court. The first letter written by Mr. Corbet specifies that the services for which he is to receive five thousand dollars are services in the superior court of San Francisco in the "pending litigation." This plainly would limit the services covered by the arrangement to services in the actions then pending, if this letter were the final arrangement between the parties. But it was not. Mr. Snook replied to it that it was not specific enough, and that he had informed the executor that the respondent's charge (of five thousand dollars) included "all the necessary litigation in the superior court." To this Mr. Corbet replied that his understanding with the executor made through Mr. Snook was that his charge of five thousand dollars included "the necessary litigation in the superior court," and this letter is the final expression of the terms of the respondent's employment. It is plain that the expression in the first letter "pending litigation" was changed *ex industria* to "all necessary litigation." [3] The inference from this is unavoidable that the charge of five thousand dollars was intended to cover litigation not then pending if such litigation were necesssary.

There remains the question as to whether or not the creditors' suit subsequently brought comes within the expression "all necessary litigation." It is claimed that this suit was not contemplated at the time Mr. Corbet's letter was written. This is undoubtedly true in the sense that an action of that particular character was not then contemplated. But it is also true that the possibility of other actions than those pending was contemplated, as otherwise there would have been no occasion for the deliberate change from an arrangement for "pending litigation" to one for "all necessary litigation."

What, then, was meant by the phrase "all necessary litigation?" Necessary for what? Clearly, it must have been all litigation necessary to accomplish the object for which the pending actions had been brought. It was the accomplishment of this object for which the respondents were employed, and was the thing which the parties had in mind and about which they were talking. That object was the setting aside of the transfers by the decedent to his brother. This also was the object of the creditors' suit. The situation, therefore, is that the respondents by the arrangement for their employment agreed that they would charge only five thousand dollars for their services in the superior court in all litigation necessary to set aside the decedent's transfers of property to his brother, and the creditors' suit subsequently brought comes directly in the category of such litigation.

It follows that the order of the lower court was in error in allowing the respondents compensation for services in the superior court in addition to the five thousand dollars provided for in the arrangement for their original employment. Before dismissing this branch of the case, however, it may be advisable to note one argument made on respondents' behalf by their counsel. It is argued that the creditors' suit could have been brought in any one of a number of counties, while the five thousand dollar charge of the respondents was limited to services in the superior court of San Francisco, and that it is not to be supposed that it was intended that the services in the creditors' suit were within the five thousand dollar charge, when they could have been taken without it by the simple expedient of bringing the action elsewhere than in San Francisco. The answer to this is, first, that no lawyer worthy of his profession would

change the venue of a contemplated action for such a reason, and we are certain that this is true of the respondents, and, second, that the matter of the venue was one finally within the control of the client and not of the lawyer.

As to the other branch of the case, the claim of the executor that the allowance of $4,550 for services on appeal in the action against the Merced Stone Company was excessive, little need be said. [4] The question of what was the proper amount was one to be determined by the probate court, and with its decision we cannot interfere, unless it appear plainly that it was without justification. It does not so appear, but rather the contrary. The action was a difficult and complicated one, and the services on appeal were quite exceptional. The trial court gave judgment against the executor. This was affirmed on appeal by the district court of appeal. The respondents then petitioned for a hearing before this court and obtained it. This court reversed the judgment against the executor and ordered the action back for a new trial. The respondents thereupon petitioned that the order of reversal be modified by directing judgment for the executor upon the findings instead of requiring a new trial. This petition was granted, so that the final result of the respondents' services on appeal was that a judgment against the executor was transformed into one for him. The chief argument of the executor's present counsel is that the compensation allowed is excessive because of the comparatively small actual value of the claim against the Merced Stone Company which was recovered from the decedent's brother. But while the value of the recovery made is an element to be considered in determining the proper amount to be allowed as compensation, it is not controlling, and, furthermore, the actual value of the recovery does not appear with any certainly. It does appear that the executor, upon acquiring the claim against the Stone Company, proceeded to enforce it, and, upon execution sale, bought in the assets of that company for about forty thousand dollars. [5] If this was the real value of the recovery obtained by the respondents for the executor, the compensation allowed them was certainly no more than reasonable, in view of the rather exceptional services rendered.

Order affirmed as to the compensation allowed the respondents for services on appeal in the action by the executor against the Merced Stone Company, and reversed as

to the compensation allowed respondents for services in the so-called creditors' suit, with directions that the lower court redetermine the amount to be allowed for the latter services, eliminating all services rendered in that action in the superior court.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Sloane, J., who was absent.