[Civ. No. 5867. Third Appellate District.—May 4, 1939.]

GEORGE H. McKAIG et al., Appellants, v. A. E. MOUTREY et al., Respondents.

[Civ. No. 5869. Third Appellate District.—May 4, 1939.]

GEORGE H. McKAIG et al., Appellants, v. CHARLES CLARK et al., Respondents.

Louis Bartlett and W. S. McGuire for Appellants.

George R. Freeman and Elmer Laine for Respondents.

THE COURT.—These cases have been consolidated on appeal and involve the same questions of law. The complaints are practically identical, the only difference being in the tracts of land involved.

These actions are brought for the following purposes: To compel the board of directors of the district to demand of the collector that she execute deeds to the district of certain lands which had been sold to the district for delinquent 1930 and 1931 assessments. Also, to compel an accounting by the defendant copartnerships of Moutrey & Benoit and Clark & Benoit for alleged profits made by them from the operation of a portion of said lands during the years 1934, 1935, and up to the filing of the complaints in July, 1936.

The complaints first allege that the plaintiffs are owners of matured and unpaid bonds of the district; that the Provident Irrigation District is now existing, and was organized

as such in 1918. The names of the officers of the district are set out, and that they were such officers, either directors, secretaries or collectors at the time of the commencement of these actions. The issuance of bonds by the district are alleged, the bonds held by the plaintiffs, and the amount of due and unpaid principal, and also the amount of due and unpaid interest coupons issued by the district, and the amount thereof held by the plaintiffs. The complaints further allege that the district has not, since the 1st day of July, 1930, made any payments upon interest coupons, nor has it paid anything upon the principal or matured bonds, and that the district has been in default in payment of matured bonds and matured coupons since said date.

The complaints also allege the adoption in 1920 by the directors of a resolution providing for the payment of assessments in two instalments, one-half to be paid on or before the last Monday in December, and the remaining one-half to be paid on or before the last Monday in June thereafter.

The complaints further allege the levying of assessments every year, and the failure of the landowners to pay the assessments upon the lands involved in this action. The complaints also allege delinquent sales have been made for nonpayment of assessments.

Following the foregoing allegations it is set forth that Moutrey, Benoit and Clark leased the lands mentioned in the respective complaints, during the years 1934, 1935 and 1936, and obtained profits therefrom.

The complaints also allege that the directors have failed to obtain a collector's deed to the lands involved, alleging also that demand has been made by the plaintiffs, of the directors, that they require execution of deeds by the collector, of the lands involved herein on account of delinquent sales and purchases of the lands by the district. It is also alleged in the complaints that the plaintiffs demanded of the collector of the district that such deeds be executed.

The plaintiffs further allege the obtaining of large profits by the defendants Moutrey, Benoit and Clark, and ask an accounting thereof, and that they be required to turn the same over to the district, and also to execute deeds to the district conveying title to the lands involved herein.

In 1930, 1931 and 1932, and until the 24th of August, 1933, the title to a large portion of the lands involved in the two actions was held by the Central Bank of Oakland. On that date the lands involved were conveyed to one L. M. Benoit, who thereafter, in January, 1934, conveyed to Moutrey an undivided one-half interest therein. It further appears from the record that Benoit and Clark were copartners in the ownership and management of a portion of the lands involved in this action, and so continued until the death of Benoit.

The defendants filed both general and special demurrers to the complaints.

As grounds of demurrer the defendants, among other things, allege that the complaints do not state facts sufficient to constitute a cause of action; that several causes of action have been improperly united; that several causes of action are set out but not separately stated; that an action for a writ of mandate is joined with an action on an implied contract and the claim against an alleged trustee by operation of law; also, that the complaints are uncertain in several particulars. Other grounds are alleged which need not be considered. The demurrers were sustained without leave to amend. From the judgments entered thereon the plaintiff appeals.

■ Respondents first urge that inasmuch as appellants failed to ask leave of the court for permission to amend their complaints after the demurrers were so sustained that they cannot now be heard to contend that there was an abuse of discretion on the part of the trial court. It is true that the sustaining of a demurrer, without leave to amend, does not constitute reversible error in the absence of an application for permission to amend. (*Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268].) Here, however, no opportunity was given the plaintiff to obtain such permission, as the judgment was entered by the clerk the day after the decision was filed. Plaintiff had no knowledge, nor notice, nor opportunity to apply for such leave. Inasmuch as appellants had no opportunity to present this request to the trial court, they cannot now be charged with omission for failure so to do.

■ In our former opinion we pointed out the error made in the proceedings relative to the sale for the unpaid and

delinquent instalment of 1930 assessment. The record shows that the sale was set for August 12, 1931, and the notice thereof was first published on July 23d, which was less than twenty-one days prior to the day of sale, as required by section 42 of the Irrigation District Act. We overlooked the fact, however, that the complaint fully and in detail set forth that the same property was legally advertised for sale and sold on August 12, 1932, for the 1931 assessment, which had also become delinquent, which left no discretion in the directors but to deed to the district three years later, all interest in the lands affected, including that formerly owned by the Central Bank.

It is true that the tax sale in 1931, for the 1930 delinquent assessment, having been based upon defective notice, was ineffectual to convey title, but nevertheless, a trust was imposed upon defendants, not upon the divestiture of title but arose when the district acquired a lien on the land by virtue of the assessment. The officers and directors became trustees for the district and its bondholders when the assessment to pay bond principal and interest was levied, and the assessment when so levied, became the property of the district and was held in trust for the bondholders under section 29 of the Irrigation District Act. If an error was made in any of the steps leading up to the sale, such error was caused by the carelessness or negligence of defendants in failing to take the necessary jurisdictional steps required in the fulfillment of their trust. Failure to sell for a delinquent assessment does not extinguish the assessment, but the sale thereunder is merely postponed and still exists until legally foreclosed or the assessment paid. This situation affected the lands then belonging to the Central Bank of Oakland, and after the transfer of the title of the bank to the officers of the district they were accountable to the beneficiaries for the proceeds of the trust, and as such trustees, the directors cannot use the land for their own profit. If they did so, under the general rules of equity they must be held to account to their beneficiaries for such profit.

Respondents claim that the proceedings on the day of the 1932 sale were erroneous on the ground they were not held in accordance with section 44 of the California Irrigation District Act, which requires that in case there is no purchaser in good faith for the property when offered for sale

on the first day, then when the property is offered thereafter for sale if there is no purchaser in good faith, the whole amount of the property assessed shall be struck off to the irrigation district. (Stats. 1929, p. 1171.) This sale was noticed for August 11, 1932. The record then recites: "Thereafter, pursuant to postponement duly made . . . and on the 12th. day of August 1932 . . . the Collector sold to the Provident Irrigation District . . . all of the property . . ."

As the property was sold on the 12th day of August, 1932, it is claimed that the district purchased the property on the first day of the sale. There is no testimony to that effect, and among disputable presumptions which may be controverted by other evidence is: "15. That official duty has been regularly performed." (Sec. 1963, Code Civ. Proc.)

The collector of the Provident Irrigation District issued his certificate of sale to the district, and the presumption is that his official duty was regularly performed; that he held the same on August 11th; offered the property for sale, and that no purchaser in good faith bid for the same, and that the sale was adjourned until August 12th, and there still being no purchaser in good faith for the same, he sold it to the irrigation district and issued a certificate of sale therefor.

In the instant case a single cause of action for an accounting and recovery of the proceeds of the trust property appears to have been set forth. The assessments levied created liens on the land and a trust in favor of the bondholders. It is for the breach of such trust that this action is brought.

Each complaint states a cause of action, and the demurrers thereto should have been overruled. The judgments are reversed.