[Civ. No. 12765.   First Dist., Div. One.   Jan. 28, 1946.]

PROVIDENT LAND CORPORATION (a Corporation), Plaintiff and Appellant, v. LOUIS BARTLETT, Defendant and Appellant; GEORGE H. McKAIG et al., Cross-Defendants and Appellants.

Louis Bartlett, in pro. per., and Paul A. McCarthy for Defendant and Appellant.

George R. Freeman, L. L. James, James Sykes and Gregory, Hunt, Melvin & Faulkner for Plaintiff, Cross-defendants and Appellants.

OGDEN, J. pro tem.—The Provident Land Corporation, a corporation, brought an action in declaratory relief against Louis Bartlett, an attorney at law, praying for a declaration of its rights and obligations with respect to a written contract whereby the defendant Bartlett was employed on a contingent fee basis to perform certain legal services for the plaintiff corporation. Bartlett answered and filed a cross-complaint, naming as cross-defendants the plaintiff Provident Land Corporation, and in addition George H. McKaig, W. G. Aldenhagen and E. O. Kaufmann, individually and as members of the board of directors of said corporation; and George H. McKaig and E. O. Kaufmann, individually and as members of the Bondholders' Protective Committee of Provident Irrigation District. The cross-complaint is in three counts, the first being based upon the express contract and the third upon quantum meruit. The second count sounds in fraud, and to this count general demurrers were sustained. Those portions of the judgment in favor of cross-defendants upon this count are the subject of the appeal of cross-complainant Bartlett, which will be discussed later.

By stipulation the complaint for declaratory relief was disregarded, and the trial proceeded upon the issues raised by the first and third causes of action of the cross-complaint. Judgment was rendered in favor of cross-complainant upon both counts, against the cross-defendants Provident Land Corporation, and George H. McKaig and E. O. Kaufmann as members of the Bondholders' Protective Committee of Provident Irrigation District, in the principal sum of $33,150. From these portions of the judgment those cross-defendants appeal.

Before discussing these appeals separately it will be helpful to summarize the circumstances leading up to this litigation.

In the year 1929 a group of bondholders of Provident Irrigation District formed a committee known as the Bondholders' Protective Committee of Provident Irrigation District. At that time, and up to the time of Bartlett's employment, the district was in poor financial condition, the landowners were not paying their assessments, and interest due upon the bonds was in default. The committee's agreement with its members provided for the deposit of their bonds with a bank as deposi-

tary. Legal title to the bonds, together with authority adequate to effect their liquidation, was vested in the committee.

In 1935 Provident Land Corporation, one of the cross-defendants here, was incorporated by the committee and the title of the committee to the bonds so deposited was transferred to the corporation in exchange for one share of stock for each $1,000 bond and appurtenant coupons. The corporation had no other assets and issued no other shares of stock. With the exception of a small number, all of the bonds controlled by the committee were so transferred to the corporation. During the times with which we here are concerned, the cross-defendants McKaig, Aldenhagen and Kaufmann were the directors of the corporation, McKaig being its president; McKaig was chairman of the committee and Kaufmann was a member thereof. There was one other member of the committee who was not made a party to the action. For convenience, the cross-defendant Provident Land Corporation will herein be referred to as the corporation, the cross-defendants McKaig and Kaufmann, as members of the Bondholders' Protective Committee, will be referred to as the committee, and the Provident Irrigation District will be referred to as the district.

On May 6, 1936, after some negotiations between himself and McKaig, and after an investigation of the affairs of the district, Bartlett made the following offer of his services to the corporation and the committee, which was accepted by them and admittedly constitutes the contract of employment which is the basis of this action:

"Provident Irrigation District
"Bondholders' Protective Committee
"Provident Land Corporation
"c/o Mr. George H. McKaig
"Russ Building
"San Francisco, California.
"Gentlemen:

"Complying with your request, I subjoin a memorandum concerning the affairs of the district and an estimate of the legal expenses connected with enforcing the rights of the bondholders.

"At the present time there are approximately 7000 acres of land suitable for rice, to which title is in the Estate of Benoit,

Moutrey, and the Federal Realty Company. Assessments have been delinquent on this for over three years and the collector of the district should have deeded it to the district in the fall of 1934. Since that time, the land has been cropped by Benoit and Moutrey; it is being cropped by them this year.

"In addition, there are about 1300 acres of land formerly standing in the name of Central National Bank, cropped by Benoit and Moutrey during the same period, and, similarly, in default.

"About 1274 acres of good rice land were deeded by the district to I. G. Zumwalt in September, 1934, on receipt from him of $26,000.00 in unmatured Provident Irrigation District bonds, and Zumwalt has taken the crop from this land for 1934, 1935, and is cropping it in 1936.

"Other land in the district, which should have been deeded to it is held by Benoit and Clark, and various other holders.

"On February 7, 1936, the district bought $50,000.00 of its bonds for $10,000.00 from Benoit, Zumwalt and Capitol National Bank of Sacramento, with funds that should have been applied to the payment of registered coupons. This money should be recovered by the district and properly applied.

"The following litigation is indicated, in order to protect the interests of the bondholders:

"(1) An action to compel the transfer to the district by the collector of all of the land in the district which is subject to such sale. This will include about 2500 acres being planted to rice by Benoit's estate and Moutrey this year. (I have no accurate figure as to the acreage, and this is approximate.) It is expected that about 75,000 bags of rice will be obtained, of which the district's share should be 25,000. After paying $4.50 per acre for water, making a total of $11,250.00 the district should have a net recovery of approximately $13,500.00 if the price be $1.00 per bag, and approximately $38,750.00, if the price be $2.00 per bag. Last year's price was over $2.00.

"(2) An action to declare Benoit and Moutrey trustees for the district of all of the profits made by them in 1934 and 1935 from the cultivation of land which should have been turned over to the district in 1934. It is reported that their profits in 1934 were $25,000.00, and in 1935 were $60,000.00.

"(3) An action against Benoit and Clark to declare them trustees for the district of the lands occupied by them which

should have been deeded by collector's deed to the district in 1934.

"(4) A suit against Benoit to recover $3,200.00 received by him for the sale to the district of 16 bonds at $200.00.

"(5) A suit against Zumwalt to recover $3,400.00 received by him for the sale to the district of 17 bonds at $200.00.

"(6) A suit against Capitol National Bank to recover $3,400.00 received by it for the sale to the district of 17 bonds at $200.00.

"(7) An action against I. G. Zumwalt to collect the balance of the purchase price of 1274 acres of land ·purchased by him for the district in September, 1934, for $26,000.00, on account of which he turned in 26 bonds of the district at par, instead of at their market price of 10 or 12. This involves $22,000.00 and interest.

"(8) An action against I. G. Zumwalt for assessments for two years, 1934 and 1935, amounting to approximately $9,000.00. A portion of this land is now planted in crops for 1936.

"(9) An action against Benoit and his associates to recover bond interest and bond payments, which, in my opinion, were illegally made under the law as it existed when the first series of bonds were issued.

"In practically all these actions and proceedings, it will be necessary to join the district, its directors and officers as defendants.

"In addition to these actions, there are a number of others which may need to be brought in order to effect the reorganization of the district. We now have a man in Willows ascertaining facts which will determine our procedure in a number of other matters.

"My compensation for this work is to be retainer of $500.00 payable now, and one-fourth of all money recovered for the Committee and/or Corporation, whether by legal action or by compromise acceptable to the Committee and/or Corporation, and shall be payable upon receipt of the money by them.

"Your committee is to pay all legal, traveling and other expense incident to this employment. It is difficult to forecast these expenses accurately. Copies of the district records which are necessary to the litigation are being obtained at a cost of $50.00; an investigator should be employed at $15.00 a day for about 10 days; costs, including traveling expenses, etc., will

have to be met. Probably $1000.00 will cover these items, unless there be a number of appeals.

"Summarizing the costs:

"Retainer of $500.00 payable now.

"One-fourth of the money recovered with or without litigation.

"Actual necessary expenses, estimated at $1000.00.

"The procedure suggested is, of course, subject to modification and additions as further investigations may indicate, and included the raising of at least several constitutional questions involved in the facts already known. Some of these causes of action may be consolidated, whenever this will not slow down trials. No suit will be started without your prior approval.

Very truly yours,

LOUIS BARTLETT."

Following the acceptance of this offer and pursuant to his employment, Bartlett instituted several legal actions in the interests of the bondholders. He testified that they occupied practically the whole time of himself and office force and required the employment of assistant counsel during the following two and one-half years. One was a proceeding in mandamus to compel the officers of the district to execute a collector's deed and take title to about 5,400 acres of land sold to the district for delinquent assessments. Judgment was rendered in the trial court compelling the transfer to the district of 4,500 acres of this land. Bartlett took an appeal from that part of the judgment refusing to compel the transfer of the balance of 900 acres. Upon the third hearing thereof in the District Court of Appeal the judgment was reversed in favor of Bartlett's position. (*Provident Land Corporation* v. *Provident Irrigation District* (Cal.App.) 94 P.2d 83.) A hearing was granted in the Supreme Court but the appeal was never further prosecuted because of the subsequent purchase of the bonds by the district. Two actions were brought on behalf of the committee to recover to the district the profits from farming operations upon the same land subsequent to its sale for delinquent assessments. An appeal from a judgment in favor of the defendants was prosecuted by Bartlett. The judgment of the lower court was first affirmed in the District Court of Appeal, and after rehearing was reversed. (*McKaig* v. *Moutrey—McKaig* v. *Clark*, 32 Cal.App.2d 537 [90 P.2d 108].) Three related suits were brought to nullify a purchase

by the district of some of its outstanding bonds not in order of preference and to recover to the district the sum of $10,000, the price paid by the district therefor. An adverse decision was appealed from and reversed by the District Court of Appeal. (*Provident Land Corp.* v. *Zumwalt* (Cal.App.) 71 P.2d 825.) Hearing was granted by the Supreme Court and the judgment adverse to the bondholders was again reversed. (*Provident Land Corp.* v. *Zumwalt,* 12 Cal.2d 365 [85 P.2d 116].) The $10,000 was restored to the district and utilized in the repair of its ditches. Suit to prevent the officers of the district from selling or leasing district lands except upon an open and competitive basis and to nullify a lease made to a former director of the district was instituted and prosecuted, but unsuccessfully. Judgment of the trial court in favor of the district officers was affirmed on appeal. (*Provident L. Corp.* v. *Provident I. Dist.,* 22 Cal.App.2d 105 [79 P.2d 392].) Several actions were brought to protect the bondholders against the running of the statute of limitations upon bonds and interest coupons. An action to compel the directors of the district to levy assessments and impose an adequate charge for water was brought, but was unsuccessful. An action to recover damages sustained by the district was commenced, but never brought to trial.

During the year 1939 one Charles F. Lambert, who was employed by the district as its fiscal agent, had been working on a plan for the refinancing of the district by means of a loan from the Reconstruction Finance Corporation which would enable it to make a compromise of its bonded indebtedness by the purchase of its bonds for the price of 20 cents on the dollar par value. McKaig, although he knew of this plan and the expectancy of its consummation, did not inform his fellow directors or members of the committee thereof. On September 27, 1939, he proposed to them a different plan of refinancing the district, representing to them that the consummation of his plan would necessitate considerable effort and expense on his part. This he offered to undertake if given an option to purchase the bonds, together with their appurtenant coupons, controlled by the corporation and committee, at the price of 15 cents on the dollar par value of the bonds. The proposal of McKaig was accepted and he was given such an option. The bonds and coupons were on the following day placed in escrow subject to McKaig's order, upon payment by

him of the price of 15 cents on the dollar par value of the bonds. Upon the same day, McKaig instructed the escrow holder to deliver the bonds to his order upon the receipt of 20 cents per dollar par value.

On October 18, 1939, in accordance with Lambert's plan, the district submitted to the Reconstruction Finance Corporation its application for a loan. On December 20, 1939, the loan was granted upon conditions that included, among others, the purchase by the district of its outstanding bonds, together with coupons maturing on and after July 1, 1931, at the price of 20 per cent of the par value of the bonds and the payment of coupons maturing earlier at the rate of $30 per bond.

The bonds were ultimately, on September 16, 1940, purchased by the district in accordance with the conditions of the loan and at the price therein provided. The corporation and the committee received from McKaig his option price of 15 per cent of the par value of the bonds, and McKaig apparently received the difference between that sum and the price paid therefor by the district.

### APPEAL OF CROSS-DEFENDANTS

The portions of the judgment here appealed from are those which adjudge cross-complainant to be entitled to recover from the corporation and the committee the principal sum of $33,150, together with accrued interest thereon in the sum of $6,130.88, upon the express contract as stated in the first cause of action, and in the same principal sum, without accrued interest, upon an implied contract for the reasonable value of his services, as stated in the third cause of action.

The principal amount of the judgment was arrived at as being 25 per cent of the purchase price paid by the district for 600 of its bonds, and appurtenant coupons maturing after January 1, 1931, at the price of 20 cents per dollar par value of the bonds, together with 420 coupons maturing on January 1, 1931, at the price of $30 each.

We shall first discuss the correctness of the judgment insofar as it permits such recovery upon the express contract.

■ Cross-defendants' position, that their contract with Bartlett must be construed as one of employment solely for the purpose of instituting and prosecuting the litigation enumerated in the contract, and that his right to receive compensation is limited to the proceeds of that litigation, is not tenable. Nor do we find any uncertainty or ambiguity in the

language employed in the agreement which requires us to look further in its interpretation.

The language of the agreement—"Complying with your request, I subjoin a memorandum concerning the affairs of the district and an estimate of the legal expenses connected *with enforcing the rights of the bondholders*" and "The following litigation is indicated, *in order to protect the interests of the bondholders*"—clearly shows the scope and purpose of the employment to be, just what is stated, to protect the interests and enforce the rights of the bondholders. (Italics added.)

The rights of the bondholders with which they were concerned, and which they wanted to be protected and enforced, were their rights to receive from the district payment of the debt, principal and interest, represented by their bonds. The bondholders had no other interest in the affairs of the district and no rights to enforce except those which were incidental thereto. To say that Bartlett contracted to protect and enforce these rights is but to say that he contracted to collect from the district payment of its indebtedness to his clients. The litigation he proposed and subsequently undertook was all intended to effect an enrichment of the treasury of the district and thereby better enable it to pay his clients. It was suggested as a means to the end, not as the end itself. Such litigation could benefit or be a recovery to the bondholders only if and when it resulted in the receipt by them of payment by the district on account of its bonded indebtedness. Some of the litigation was not for a monetary recovery, even to the district treasury, but it was all designed to effect an eventual recovery by the bondholders. That recovery could only come from the district by payment of its debt, either in full, or partially as the result of compromise. ▆ When the bondholders sold their bonds and appurtenant coupons to the district for a price less than the par value thereof they in effect and in fact recovered, by compromise acceptable to them, the indebtedness of the district. (*Preston* v. *Herminghaus,* 211 Cal. 1 [292 P. 953].) That this was precisely the recovery contemplated by Bartlett's contract is indicated by its provision that his compensation "shall be payable upon receipt of the money by them,"—referring to the corporation and the committee.

No other reasonable interpretation can be given to the contract. To hold, as cross-defendants contend, that Bartlett could look for compensation only to monetary recoveries di-

682

rectly accruing to his client bondholders in the litigation he suggested, would be to hold that he contracted to undertake this work for a share of a recovery that could not possibly result; in other words, that he contracted to perform those services gratuitously. To say, as cross-defendants do, that, because the bonds had some value before the contract was entered into, that value was not recovered to the bondholders and Bartlett was not entitled to a share thereof, would be to rewrite the agreement. The parties might well have agreed that Bartlett's compensation would be limited to a percentage of all sums recovered over and above the then present market value of the bonds. The answer is that they did not so agree, and their contract expressly provides otherwise. It specifically states "one-fourth of *all* money recovered." (Italics added.)

█ This is not a case where an ambiguous contract is entered into between an attorney and his client, such as in the cases of *Boardman* v. *Christin*, 65 Cal.App. 413 [224 P. 97]; *Hollingsworth* v. *Lewis,* 93 Cal.App. 526 [269 P. 709]; *Estate of Prather,* 183 Cal. 314 [191 P. 521]; and *Bennett* v. *Potter,* 180 Cal. 736 [183 P. 156], cited by cross-defendants. However, even though it were, the rule of construction in favor of the client is, as held in *Pinto* v. *Seely,* 22 Cal.App. 318 [135 P. 43], not so inflexible that it may be invoked to perpetrate a palpable injustice, or that it calls for a construction of such a contract beyond the express covenants of the parties. To the same effect is *Preston* v. *Herminghaus, supra.*

Here the trial court determined that the services rendered by Bartlett were of substantial value to the bondholders and that as a result of these services the district was enabled to compromise its indebtedness by the purchase of its bonds for the price of 20 cents per dollar par valuation. It found that as a result of the litigation prosecuted by him there was recovered to the district title and possession of 6,730 acres of land, title to which had been lost to it by misconduct of its officers; that the district was thereby enabled to sell this land to bona fide purchasers at prices representing its fair value; that the district recovered the sum of $10,000 which had been wrongfully used by its officers; that the district was thereby enabled to have sufficient funds to compromise and pay all liens against the district and the lands therein and to pay all expenses of the plan of refinancing and reducing its bonded indebtedness, as agreed between the district and the Recon-

struction Finance Corporation; and that had it not been for the services performed by Bartlett the district would not have been able to obtain the loan or so purchase its bonds.

Whether Bartlett's services were of value and whether the results of the litigation prosecuted by him contributed to the ability of the district to effect its refinancing were the subject of sharp conflict in the testimony. Cross-defendants urge here, as they did before the trial court, that the results of that litigation in no way affected the ability of the district to consummate the refinancing, except adversely. They accuse Bartlett of hindering, instead of assisting in, the consummation of the negotiations for the purchase of its bonds, in that he insisted upon a settlement of his fee being first made with him. These conflicts were resolved in Bartlett's favor by the trial court. The findings thereon find ample support in the record and are conclusive here. The complete records of the various items of litigation carried on by Bartlett were received in evidence. We are entitled to consider the record of these proceedings as they appear in the published reports of the District Court of Appeal and Supreme Court. It is therein disclosed, as well as in the transcript before us, that that litigation did, in fact, result in substantial benefit to the financial position of the district and the correction, to the benefit of its bondholders, of instances of improper administration of its affairs by its officers. That there was a direct causal connection between the services performed by Bartlett and the ultimate ability of the district to compromise its indebtedness to its bondholders is apparent, and the determination of the trial court to that effect cannot here be disturbed.

Cross-defendants did not at the trial, nor do they here, dispute the fact that Bartlett, if entitled to a percentage of the proceeds of the sale, is entitled to recover upon the basis of 20 cents per dollar par value of the bonds. By an amendment to his first cause of action Bartlett alleged that the option given to and exercised by McKaig to purchase the bonds and coupons for 15 per cent of the par value of the bonds was fraudulent and a mere pretense for the purpose of depriving him, Bartlett, of his full compensation. The trial court found these allegations to be true. There was no direct evidence that in giving the option to McKaig the other directors did so with actual knowledge of the pending consummation of the negotiations by the district to enable it to pay a price of 20

cents upon the dollar. There is ample evidence, however, that McKaig so knew and expected that to be the purchase price to be paid by the district. Whether the purported purchase by McKaig at the lesser price was a fraud upon the corporation and the bondholders he represented is immaterial to this discussion. ■ The corporation or the committee could not, by the device of selling the bonds to McKaig, escape their full contractual obligation to Bartlett. (*Preston* v. *Herminghaus, supra.*) Whether all of the officers thereof acted in good or bad faith is immaterial insofar as the rights of Bartlett are concerned. The option was given to McKaig upon the very eve of the purchase by the district of the bonds for 20 cents per dollar par value, and the circumstances under which it was given amply justified the trial court in ignoring the lesser price of the purported sale to McKaig.

■ Cross-defendants do, however, urge that the judgment is excessive as being based in part upon the sale of bonds which were not owned by, or under the control of, either the corporation or the committee. They concede that 511 bonds were owned or controlled by them. The judgment is computed upon the basis of 600 bonds.

The evidence with respect to the ownership or control by cross-defendants of the disputed number of bonds (which the testimony indicated to be 90 but which the findings indicate to be 89) is not free from ambiguity, and counsel in their briefs have not assisted in its clarification. Examination of the testimony of McKaig, however, reveals the following with respect thereto:

Sixty-one bonds were owned by the Security Bank of Los Angeles as trustee. By reason of their trust character they were not deposited with the committee but were placed in a special escrow under an agreement to pay to the committee a pro rata share of litigation expenses (apparently expenses of the litigation carried on by Bartlett). These bonds were included in the actions brought by Bartlett to stay the running of the statute of limitations. Immediately prior to their deposit in escrow for sale to the district, they were purportedly purchased by McKaig at the price of 15 cents per dollar par value.

Four bonds had been acquired by the committee as the result of default by the original owners in paying assessments levied thereon. In October, 1939, these bonds were purportedly sold to McKaig by the committee for the price of 15 cents per dollar par value.

Twenty-five bonds were bought at the same price by Mc-Kaig from various other owners in order to acquire the necessary percentage of outstanding bonds to meet the requirements of the deposit agreement with the district. These bonds had been originally deposited with the committee, but by consent had been withdrawn in 1936.

As to these last-mentioned 25 bonds, we are unable to find any justification for their inclusion in the computation of the amount of the judgment. With respect to the other 65 bonds in dispute, however, we are of the opinion that they were properly included.

We conclude, therefore, that the trial court properly rendered judgment in favor of cross-complainant upon the first cause of action, but that the amount thereof should be reduced in an amount equal to 25 per cent of the purchase price of the 25 bonds above referred to, to wit, the sum of $1,250.

There remains but one other point to be determined upon this appeal. The trial court found the allegations of both the first and third causes of action to be true and rendered judgment upon both counts with the proviso that recovery be "limited to recovery upon said first cause of action if the judgment thereon is fully satisfied." Conceding such findings to be inconsistent, the inconsistency is not fatal. Cross-complainant, having relied upon and established his right to compensation under an express contract, cannot at the same time recover in quantum meruit upon the theory of an implied contract. The court having made specific findings as to the express contract and its performance, there can be no doubt but that its judgment was based thereon. It is the established rule that the findings upon the inconsistent theory may be disregarded as surplusage. (*Baird* v. *Ocequeda,* 8 Cal.2d 700 [67 P.2d 1055]; *Hirshberg* v. *Rose,* 136 Cal.App. 653 [29 P.2d 785]; *Niles* v. *Louis H. Rapoport & Sons,* 53 Cal. App.2d 644 [128 P.2d 50].) In order that there may be no question as to the meaning of the judgment here, however, we are of the opinion that it should be modified by striking therefrom all reference to the recovery of judgment upon the third cause of action.

As so modified, to wit, by reducing the principal amount thereof to the sum of $31,900; by reducing, accordingly, the amount of accrued interest allowed to the date of the judgment to the sum of $5,900.37; and by striking therefrom all refer-

ence to judgment upon the third cause of action, those portions of the judgment in favor of cross-complainant are affirmed.

## APPEAL OF CROSS-COMPLAINANT

This is an appeal from those portions of the judgment which are in favor of cross-defendants upon the so-called second cause of action. Those portions of the judgment follow the sustaining of general demurrers to this cause of action and the failure to amend. Before final judgment herein was entered, cross-complainant filed appeals from purported judgments of dismissal upon this cause of action. This court, in *Provident Land Corporation* v. *Bartlett,* 53 Cal.App.2d 383 [127 P.2d 928], dismissed these appeals as premature. After the present appeal was taken, upon oral motion to dismiss it was found necessary to cause a modification of the judgment so as to finally dispose of the issues here involved. The judgment now disposes of all such issues, and this appeal is properly before us.

The so-called second cause of action is directed against the corporation; McKaig, individually, as a member of the committee, and as a director of the corporation; Kaufmann, individually, as a member of the committee, and as a director of the corporation; and Aldenhagen, individually, and as a director of the corporation. Its apparent purpose is to secure a judgment against McKaig, Kaufmann and Aldenhagen in their individual capacities. It incorporates by reference all of the charging allegations of the first cause of action as to the execution and performance of the express contract of employment; adds a detailed recital of the circumstances of the sale of the bonds to McKaig at the price of 15 per cent of their par value at a time when, it is alleged, the cross-defendants knew, or should have known, that the bonds could be redeemed at 20 per cent of their par value; and alleges this purported sale to be a fraud perpetrated by the individual cross-defendants upon the corporation, the bondholders and cross-complainant. In addition to the same prayer for monetary judgment as in the other causes of action it is prayed that the sale of the bonds to McKaig be annulled and that he be required to restore to the corporation all sums received by him from their subsequent sale to the district. Except for bringing in as cross-defendants McKaig, Kaufmann and Aldenhagen in their individual capacities and seeking to recover judgment

against them as individuals, and except for seeking to require McKaig to restore his profits to the corporation, there is no distinction in the theory of this cause of action and that of the first cause of action upon which cross-complainant recovered judgment. That judgment gave cross-complainant the identical relief sought in this cause of action from the corporation and the committee. As to those cross-defendants it was but repetition and surplusage. As previously pointed out, in the first cause of action the fraudulent nature of the purported sale to McKaig was alleged, and the trial court found such averment to be true. Bartlett's compensation was computed upon the basis of a recovery from the district by the corporation and committee of 20 cents per dollar par value of the bonds, and such computation included the profit of $12,600 received by McKaig from the payment of coupons maturing prior to July 1, 1931. Therefore, as to the corporation and the committee, the allegations of the second cause of action presented no new issues nor did they extend the limits of possible recovery from those cross-defendants.

This narrows the question to whether a cause of action is stated against McKaig, Kaufmann and Aldenhagen as individuals.

Bartlett occupied the position solely of a creditor of the corporation and the committee. He was neither a bondholder nor a stockholder. He could not be injured or defrauded by the alleged misconduct upon the part of the three individual cross-defendants unless that misconduct prejudiced his position as such creditor. Unless it so prejudiced him, he cannot complain of any wrong perpetrated upon the corporation or the stockholders thereof. The mere fact that officers commit a fraud on the corporation does not necessarily give an individual creditor an action at law against them for fraud and deceit. (19 C.J.S., p. 282.)

The rule is stated in 3 Fletcher, Cyclopedia of Corporations, page 567, as follows: "A corporate officer or agent is personally liable for damages caused by his fraud or deceit, to the person directly injured thereby. As to the third persons dealing with a corporation, the directors are merely agents of the corporation, their liability being the same, and if they assist or participate knowingly or recklessly without knowledge, in obtaining property by fraud or deceit, they are liable

to an injured person who relies upon their representations. . . . However, if recovery is sought on the ground of fraud, all the necessary elements going to make up fraud at common law or under a statute defining fraud, must appear, including reliance on the false statement and injury therefrom.''

■ In his pleading cross-complainant alleges nothing, except his mere conclusion of injury, to show any damage or prejudice to him resulting from the cross-defendants' conduct. No allegations as to insolvency of the corporation or committee, or as to their inability to respond to the judgment sought, are made. The pleading affirmatively shows the receipt by the corporation and the committee of a sum equal to 15 per cent of the par value of the bonds, an amount far in excess of the claim of cross-complainant. No circumstance is alleged to indicate any prejudice to his right or ability to recover in full by reason of the fraudulent profit made by McKaig. The so-called second cause of action being fatally defective in this respect, the demurrers thereto were properly sustained. During the course of the trial, cross-complainant was refused permission to file a similar pleading. The proposed pleading was equally as defective, in the same respect, as the original to which demurrers had been sustained, and its filing was properly refused.

The findings and judgment are modified by reducing the principal amount thereof to the sum of $31,900; by reducing the amount allowed as interest thereon to $5,900.37; and by striking therefrom all reference to the third cause of action. As so modified, those portions of the judgment are affirmed; and the portions of the judgment in favor of cross-defendants on the second cause of action are affirmed. Cross-complainant is entitled to recover his costs incurred on the appeal of cross-defendants; cross-defendants to recover their costs on the appeal of cross-complainant.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied February 27, 1946, and cross-defendants and appellants' petition for a hearing by the Supreme Court was denied March 28, 1946.