[Civ. No. 19649.   Second Dist., Div. Three.   Nov. 13, 1953.]

AMERICAN FOUNDRY (a Corporation), Respondent, v. RONALD V. MILOSEVICH et al., Appellants.

Irvin Grant for Appellants.

Stephen Monteleone for Respondent.

SHINN, P. J.—American Foundry, a corporation, recovered judgment against Ronald V. Milosevich and Barnislav J. Zarubica, copartners, in the sum of $4,005.75, being the unpaid balance of the purchase price of pipe and other materials sold to the defendants. The answer of defendants consisted of a general denial. They filed a cross-complaint alleging that plaintiff agreed to furnish pipe which would comply with the specifications under a contract between J. E. Haddock, Ltd., and the State of California Department of Public Works, and a subcontract between Haddock and the defendants, under which defendants were constructing certain public works; the pipe furnished by plaintiff did not comply with said specifica-

tions; after it was installed it was tested and developed numerous leaks which defendants were unable to repair; it was rejected by the state and the Haddock Company, and defendants were required to and did replace the pipe, to their damage in the sum of $6,979.45, for which sum they sought judgment. It was alleged that plaintiff represented that the pipe conformed to the state's specifications, and warranted that it was suitable for the purposes for which it was intended. Plaintiff answered the cross-complaint, denying that it had any knowledge of the specifications of the state contract, or that it warranted the pipe, and alleging that it furnished the pipe and other materials as ordered by the defendants.

The court found that pursuant to defendants' request plaintiff submitted the following quotation to defendants: ·

"March 12, 1951

"R. K. Henze
Milosevich-Zarubica Construction Co.
1433 W. Olympic Blvd. ·
Atten. Mr. J. De Rita

"Gentlemen: With reference to your conversation with Mr. Meaglia regarding 4″, and 8″ Soil Pipe. We are pleased to quote you the following on the above material.
1200′—4″ S.H. Vic. Soil Pipe—70.62 Per Hundred Feet.
1450′—8″ S.H. Vic. Soil Pipe—219.86 Per Hundred Feet

"The above prices are net, trusting this meets with your approval, we remain.

American Foundry

By  A. T. Field
      ———————
      A. T. Field
      Sales Mgr."

and that defendants orally accepted said quotation, ordered said pipe in accordance therewith, that plaintiff delivered the same, and that defendants accepted and used the pipe in said construction work; prior to delivery the pipe was examined and inspected by said defendants "through inspectors of the State of California" and was approved. It was found that defendants' order called for 4-inch single Hub Victory soil pipe and 8-inch single Hub Victory soil pipe, the same being descriptive names well known in the trade for pipe intended for use in gravity flow under a pressure not in excess of 35 pounds; that plaintiff was not informed as to where the pipe was to be used, nor that it would be required

to comply with the specifications of Haddock's contract with the state, nor was plaintiff advised as to the terms of the subcontract between defendants and the Haddock Company; that defendants were fully advised by plaintiff that the pipe was not intended to be used under pressure in excess of 35 pounds, but that defendants nevertheless requested delivery of the same. It was also found that the state rejected the pipe because it failed to meet the specifications under the prime contract which called for pipe that would withstand hydrostatic pressure of 50 pounds, and that plaintiff furnished sufficient sound pipe with which defendants could have replaced the sections of pipe that developed leaks.

It is first contended there was no evidence to sustain the finding that plaintiff manufactured the pipe in accordance with the order of defendants. It is said in defendants' brief "that plaintiff was well aware of the fact that the pipe would have to withstand a minimum hydrostatic pressure of 50 pounds to the square inch." The transcript reference given is to testimony of plaintiff's sales manager, Field, that he was informed of this requirement by defendants' agent after the pipe had been installed.

Defendants contend that De Rita was shown to be plaintiff's agent, and that his knowledge of the specifications should have been imputed to plaintiff. De Rita was a brother-in-law of defendants' office manager, although not an employee. He contacted plaintiff's president, Meaglia, and informed him of defendants' need for pipe. Meaglia told him his company did not sell to contractors, but would make an exception to accommodate De Rita. The latter called again, giving Meaglia a quotation he had received, and stating that the price per foot should enable Meaglia to tell the type of pipe defendants wished to purchase. The price quoted corresponded to the prevailing price of Victory pipe. De Rita negotiated for himself a five per cent commission from plaintiff. The court impliedly found that De Rita was not plaintiff's agent. This was a fair inference from the evidence that De Rita was negotiating on behalf of defendants.

There was evidence that "Victory soil pipe" was a term used as descriptive of the wall thickness of pipe, and that the lighter pipe has been thus described since 1941 and 1942; 8-inch Victory pipe weighs 115 pounds per 5-foot lengths, extra heavy, 150 pounds; soil pipe is used only for drainage purposes and is not a pressure pipe; Victory pipe stands a pressure of 30 pounds, extra heavy, 50 pounds. Plaintiff had

been manufacturing the Victory pipe for several years. It was a lighter grade of pipe that had come into use when there was a shortage of material for civilian use. There was evidence that the pipe furnished by plaintiff was Victory soil pipe, as that term was commonly known and used in the trade, and that the pipe furnished by plaintiff conformed to the only description or specification contained in defendants' order; defendants did not inform plaintiff as to the specifications for pipe in their contract with the prime contractor, nor as to the specifications in the contract with the state. Plaintiff's salesmanager, Field, testified that after plaintiff had submitted its bid, he asked Mr. Henze, office manager of defendants, where the pipe was to be used and was told "it was up on the freeway." Field asked "what for" and Henze said something about a pressure feed sewer line. Field questioned him as to whether they should use Class 50 water main and Henze replied "No, this calls for soil pipe," and the matter was dropped. The court could have inferred from this testimony that defendants intended to use the lighter Victory pipe and did not expect to receive anything else. It is not questioned that the pipe was inspected by state inspectors before it was delivered. The court was warranted in concluding that plaintiff furnish defendants with the pipe they ordered, namely, Victory soil pipe of weight and thickness which was customary in the trade. Inasmuch as the offer of plaintiff and its acceptance by defendants constituted the entire contract, and plaintiff fulfilled its contract, it is of no moment that the pipe did not meet the requirements of the contract with the state.

There was a finding that the pipe when put under pressure leaked in not more than 12 places, some due to improper workmanship in installation, and others due to pinholes in the pipe; that not more than 100 feet of pipe was defective, and that the same was replaced by plaintiff with sound pipe. Defendants question the finding that plaintiff replaced the defective pipe. There was evidence that plaintiff delivered on the job sufficient sound pipe to replace all defective sections, although the same was not used by defendants.

The complaint contained a common count for the value of materials sold, and also one on an open book account. The allegations of these causes of action were found to be true. It is contended that the findings are in irreconcilable conflict, in that plaintiff was allowed to recover on an express contract and also on an implied contract, although it is conceded by

defendants that the objection would be untenable if the findings establish liability under an express contract. ■. Since the findings justify recovery on the express contract and are supported by the evidence, the findings as to the implied contracts are redundant and should be disregarded. (*Provident Land Corp.* v. *Bartlett*, 72 Cal.App.2d 672 [165 P.2d 469].)

Although the allegations of the cross-complaint as to breach of contract and breach of warranty are negatived by the findings to which we have referred, there were express findings that those allegations of the cross-complaint were untrue. The judgment has support in the findings which, in turn, are supported by the evidence.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.