[Civ. No. 438.   Fourth Appellate District.—August 22, 1930.]

WILLIAM HOWELL, Respondent, v. SARAH E. MAYS et al., Appellants.

Edward J. Kelly for Appellants.

Adam Thompson, Renwick Thompson and Gordon Thompson for Respondent.

HAINES, J., *pro tem.*—This action was brought to set aside a deed of conveyance from respondent, an aged man, to appellant Sarah E. Mays, his daughter, of certain premises in the city of San Diego, California, theretofore occupied by him as his home. Appellant Levi Mays is the husband of the said Sarah E. Mays. The complaint asserts that the deed was signed on April 1, 1927, by respondent; that respondent at the time was, and had for two months previously, been very ill of an illness from which, when the deed was signed, he was not expected to recover; that he signed the deed on the special understanding with appellants in whom he had particular confidence, that it should neither be recorded nor pass from him the title to the property except only in the event of his death from that particular illness; that appellants, in violation of the understanding and without respondent's knowledge, proceeded to record the deed, of which respondent did not learn until October 17, 1927. The suit was filed within three days thereafter. The answer alleged the execution and delivery of the deed to appellant Sarah E. Mays in consideration of love and affection, without any reservations whatever, denied that respondent was at the time particularly ill, alleged that respondent had expressly stated his intention that it immediately pass the title, denied any understanding to the contrary and denied any understanding that it should be effective only in the event respondent died from the illness with which he was then suffering and denied any understanding that the instrument should not be immediately recorded.

The case was tried before the court with an advisory jury, which, in answer to special interrogatories, found that respondent did not deliver the deed with the intention of passing any title to the property and that it was without consideration. The jury's determination was adopted in the findings of the court and judgment canceling the deed was rendered accordingly.

(1) It is claimed in support of the appeal that, though the evidence had warranted the conclusions of the jury and the court, all that would follow would be that the deed passed to appellant Sarah E. Mays the title to the property, subject to a life estate retained by the respondent. There is no merit in the contention. The court has found on conflicting evidence that there was no delivery

with the intention of passing *any* title and we are bound by its findings.

(2) Appellants' main contention, however, is that the trial court erred in permitting respondent to testify about his intention in signing the deed. The point is succinctly presented by the following extract from the record:

"Q. When this paper was signed by you, that deed, did you intend to convey to them, at that time, the title that you had in the property?

"Mr. Staley (counsel for defendants): Objected to as incompetent, irrelevant and immaterial. The paper speaks for itself.

"Mr. Thompson: He can testify as to the intentions in regard to the document.

"The Court: I would say so in regard to a gift deed. The objection is overruled."

The question being repeated the plaintiff answered, "No sir; not as long as I live."

It is claimed that the inquiry made of the witness invaded the province of the jury and court by asking his conclusion about the exact point which the court and jury were to decide. But the question did not seek to elicit a conclusion but a fact peculiarly within the witness' knowledge. It is further claimed that no witness should be allowed to testify to intentions resting solely in his own mind and uncommunicated to others because of the impossibility of meeting such testimony. Professor Wigmore in his work on evidence has dealt with that contention as follows:

"Under the influence of some obscure suggestion, not easily traceable, the view has often been urged upon the courts that a person—especially a party—should be disqualified from testifying to his own intent or motive, even when that intent or motive is material to be investigated.

"The argument is (so far as any has been vouchsafed) that such testimony may be falsified without the possibility of detection, and that therefore it is dangerous to permit an interested person to allege, in effect, whatever he pleases as to his own state of mind. The answers to this argument are various and sufficient. In the first place there is no precedent for it in the inherited common law; it is an attempt to create a rule without an analogy in the accepted doctrines of the judicial rulings. In the next place, it as-

sumes that there is no counter evidence available, and yet asks that the only evidence which it assumes to be available shall be excluded,—in other words, asks that a concededly proper issue be submitted to the jury with no evidence at all. In the third place, its assumption is incorrect in fact, namely that there is no other available and sufficient evidence of intent or motive by which the person's own testimony can be tested and checked; for the evidence from conduct and circumstances and from others' testimony is not only a permissible but a potent source of belief, and is amply sufficient to guard against falsification." (1 Wigmore on Evidence, 2d ed., p. 1017, sec. 581.)

In support of his views the text-writer cites an imposing list of cases. The same author elsewhere says:

"Testimony to one's own intention, or other state of mind, has often been attacked on the ground that it is really a disqualification by interest (ante, sec. 581), i. e., the argument is that, since a person's own intention can be known only to himself, his statement of what it is or was cannot be safeguarded by the possibility of exposing its falsity, through the aid either of conflicting circumstances or of opposing eyewitnesses; and that thus the influence of self-interest in falsifying is too dangerous and that such testimony should consequently be forbidden. This argument has been generally repudiated." (4 Wigmore on Evidence, 2d ed., p. 185, sec. 1965.)

The views of the learned author are the same which have been repeatedly adopted by the courts of this state. (*Kyle* v. *Craig*, 125 Cal. 107, 114 [57 Pac. 791]; *Fanning* v. *Green*, 156 Cal. 279, 285 [104 Pac. 308]; *Fulkerson* v. *Stiles*, 156 Cal. 703, 706 [26 L. R. A. (N. S.) 181, 105 Pac. 966]; *Gilmore* v. *North Pasadena Land & Water Co.*, 178 Cal. 6, 9 [171 Pac. 1066]; *Potter* v. *Smith*, 48 Cal. App. 162, 169 [191 Pac. 1023]; *Bertelsen* v. *Bertelsen*, 7 Cal. App. 258, 261 [94 Pac. 80].)

Cases in point from other states to the same effect are: *Boulder & W. R. D. Co.* v. *Liggett D. & R. Co.*, 36 Colo. 455 [86 Pac. 101]; *Fox* v. *Shanley*, 94 Conn. 350 [109 Atl. 249]; *Stevens* v. *Stevens*, 150 Mass. 557, 559 [23 N. E. 378]; *Grout* v. *Stewart*, 96 Minn. 230 [104 N. W. 966]; *Gassert* v. *Noyes*, 18 Mont. 216 [44 Pac. 959].

In reality the inquiry of ultimate importance in this case was not what respondent had in mind when he *signed* the deed, but whether he ever *delivered* it with intent to pass title. Yet the court and jury had the right to hear testimony about the intention with which he signed the instrument for whatever weight they might give that in determining the more crucial question of whether there was ever an executing delivery of it.

The judgment is affirmed.

Cary, P. J., and Marks, J., concurred.