[L. A. No. 10445. In Bank.—March 24, 1931.]

BARNHART AIRCRAFT, INC. (a Corporation), Respondent, v. G. W. PRESTON et Ux., Appellants.

20

Leslie H. Kranz and Wellburn Mayock for Appellants.

Dryer, Castle, McConlogue & Richards, Dryer, Castle & Richards, C. H. Hartke, Bruce Wallace and H. L. Pratt for Respondent.

THE COURT.—In making an order of transfer to this court we were satisfied that the District Court of Appeal, Third Appellate District, properly reversed the judgment entered for the plaintiff, but we were unable to agree with all of the reasons advanced by that court in support of its conclusion. The following portion of the opinion prepared by Mr. Justice Pullen, *pro tempore*, meets with our approval, and is therefore adopted as and for the decision of this court:

"This is an action on a contract, one count being for the breach thereof and the other for goods sold and delivered and for the reasonable value of a certain brick-making machine.

"Appellants were engaged in the manufacture and sale of pressed brick and entered into an agreement with Barnhart Aircraft, Inc., respondent herein, who agreed to design and construct an automatic brick-making machine capable of producing 25,000 bricks conforming to certain designated specifications in ten or less successive hours. Respondent agreed to deliver the completed machine not later than one year from the date of the agreement; and when it was demonstrated that the machine would make the number, kind

and character of brick in the prescribed time then appellants were to pay to respondent the amount agreed upon.

"Respondent designed and undertook the construction of the machine and set it up for demonstration purposes at the brick yard of appellants. Several demonstration runs were made, but never did the machine perform as required by the contract. . . . Respondent claims failure of the machine to perform was due to the fact the concrete mixer and conveyor as furnished by the appellants were inadequate to supply to the machine the mixture in sufficient quantity or of required composition. Respondent sets forth in its complaint that it was understood and agreed between the parties that appellants were to furnish, provide and install in connection with said brick-making machine a concrete mixer in all respects adequate to provide and capable of providing sufficient concrete in the proper form and mixture to permit said machine to operate in the making of brick continuously and to produce 25,000 brick in ten or less successive hours. It, therefore, was essential to the cause of action of respondent to prove this material allegation. This purported understanding or agreement was based upon paragraph (t) of the contract, which read as follows: 'Second party [respondent herein] will furnish all necessary machinery, motors and attachments for operation of said machine, save concrete mixer, power line or lines and steam curing rooms.' In interpreting paragraph (t), quoted above, the trial court permitted parol evidence to be introduced for the purpose of explaining what was termed an extrinsic ambiguity.

"The first point to be determined, therefore, is whether such an ambiguity is found in the language of paragraph (t) and whether or not the trial court erred in receiving parol evidence in respect to the construction of the paragraph to which we have referred. The trial court, believing paragraph (t) contained such an extrinsic ambiguity, permitted parol evidence to be admitted. This was done under the provisions of sections 1856 and 1860 of the Code of Civil Procedure. Section 1856 of the Code of Civil Procedure reads as follows:

" 'When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between

the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

" '1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

" '2. Where the validity of the agreement is the fact in dispute.

" 'But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties.'

"Section 1860 of the Code of Civil Procedure is as follows:

" 'For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.'

■ "The rule as stated in section 1860 of the Code of Civil Procedure can only be invoked to explain an ambiguity which appears upon the face of the document itself. (*United Iron Works* v. *Outer Harbor Dock & Wharf Co.*, 168 Cal. 81 [141 Pac. 917, 919]; *Peterson* v. *Chaix*, 5 Cal. App. 525 [90 Pac. 948].) In *United Iron Works* v. *Outer Harbor etc. Co.*, *supra*, the court said:·

" 'Appellant undertook by parol evidence of the "surrounding circumstances" to show that there was such a warranty given even if it were not expressly embodied in the written contract. The ·objections to the admission of this evidence were sustained and this is the first one of the asserted errors, the contention being that under section 1647 of the Civil Code and section 1860 of the Code of Civil Procedure such evidence was clearly admissible. In this, however, appellant errs. "These sections but enact the common-law rule. It is never within their contemplation that a contract reduced to writing and executed by the parties shall have anything added to it or taken away from it by such evidence of 'surrounding circumstances'." This rule of evidence is invoked and employed only in cases where upon the face of the contract itself there is doubt and the evidence is used

to dispel that doubt, not by showing that the parties meant something other *than* what they said but by showing what they meant *by* what they said. (*Harrison* v. *McCormick,* 89 Cal. 327 [23 Am. St. Rep. 469, 26 Pac. 830]; *Kreuzberger* v. *Wingfield,* 96 Cal. 251 [31 Pac. 109]; *Balfour* v. *Fresno Canal Co.,* 109 Cal. 221 [41 Pac. 876]; 3 Jones' Commentaries on Evidence, sec. 454.)'

"Jones in his Commentaries on Evidence, volume 3, section 454, cited in the foregoing opinion, states the rule as follows:

" 'The rule has been laid down in the adjudicated cases that no evidence of the language employed by the parties in making the contract can be given in evidence except that which is furnished by the writing itself. It will be found that nearly all, if not all the illustrations given in the last section [entitled Proof of Surrounding Facts] recognized the general rule that the written contract must govern, and that proof of the acts, situation, and statements of the parties can have no other effect than to ascertain the meaning of the parties as expressed in the writing. It will also be found that in the cases where evidence of the declarations of parties has been received, the language of the writing admitted of more than one construction, either upon its face or explained by the parol evidence concerning the surrounding facts, or identifying the subject matter or the parties.

" ' . . . Ambiguity in a written contract, calling for construction, may arise as well from words plain in themselves but uncertain when applied to the subject matter of the contract, as from words which are uncertain in their literal sense and it may be discovered on cross-examination, without precluding its explanation, but it must relate to a subject treated of in the paper and must arise out of words used in treating that subject. Such an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful.

" 'It must be borne in mind that although declarations of the parties may in some cases be received to explain contracts or words of doubtful meaning, yet no other words can be added to or substituted for those of the writing. The courts are not at liberty to speculate as to the general

intention of the parties, but are charged with the duty of ascertaining the meaning of the written language.'

■ ''The effect of the evidence received by the court in the instant case was to write into the contract a provision not placed there by the parties, although respondent in its complaint attempted by pleading the legal effect of the contract to incorporate therein such an understanding, but when confronted with the document itself the interpolation becomes obvious. The language of paragraph (t) which was agreed upon by the parties to the contract provided that the second party (respondent herein) would furnish all necessary machinery, motors and attachments for the operation of the machine, save concrete mixer, power line and steam curing rooms, is not the same agreement as constructed therefrom · by the court to the effect that the parties of the first part (appellants herein) agree to provide a concrete mixer in all respects adequate to provide and capable of providing sufficient concrete in proper form, manner and mixture to permit or enable said machine to operate in the making of brick continuously and to produce 25,000 brick of given specifications in ten or less successive hours. A study of the contract in question seems to clearly indicate further that respondent was to design and construct a machine capable of performing a definite requirement, but until such machine had been designed, constructed, set up and had demonstrated its ability to turn out 25,000 brick of specified characteristics in a given time, all within one year from the date of the contract, then and not until then were appellants to be called upon to make any payments or to accept the machine.

■ ''It is true that appellants designated the point of installation, but that was admittedly done before the machine had proved its worth and could not be construed as an acceptance, although the mixer and conveyor belt of appellants were used to mix and convey the concrete to the machine in question. ■ In determining the construction of the terms of a contract the acts and interpretation of the parties themselves to the contract have great weight with the courts in construing the intent of the parties, but such acts must be direct, positive and deliberate and must show that the acts so done were done in an attempted compliance with the terms of the contract or agreement. Here the rec-

ord discloses the mixer and conveyor were used not by the direct instruction of the appellants or with the idea of carrying out any of the provisions of the contract, but was a permissive use only. The use of the word 'operate', having in mind the entire contract is significant for if the duty rested upon appellants to cooperate in the experimental stages of the designing and constructing of the machine some word connoting the period of demonstration as distinct from the period of operation would have been used. As a condition precedent to the payment of the purchase price respondent was required to design and construct a brick-making machine that would comply with the prescribed conditions, and if the lack of a mixer was the agency that prevented performance the duty rested upon respondent to obtain such a mixer elsewhere and to complete the test. There is nothing so unique in the supplying of concrete to a brick-making machine that would excuse respondent from going into the market if necessary and obtaining such mixer. . . .

"Appellants urge that the complaint of respondent did not state a cause of action in that it did not specifically allege that the terms of the contract had been complied with. We are of the opinion that the allegation that 'plaintiff did and performed each and every act and thing incumbent upon it to be performed fully and completely in accordance with the terms and provisions of said agreement and *addendum,* except in so far as such performance has been prevented by the acts and omissions of the defendants' is sufficient under authority of *Gilfallan* v. *Gilfallan,* 168 Cal. 23 [141 Pac. 623, Ann. Cas. 1915D, 784]."

What has been said sufficiently disposes of the appeal, and we therefore find it unnecessary to pass upon the point having to do with the admissibility in evidence of certain depositions. The point may not arise on the second trial.

The judgment is reversed.

Rehearing denied.