[Civ. No. 17886.   Second Dist., Div. Two.   Nov. 20, 1950.]

EASTERN-COLUMBIA, INC. (a Corporation), Appellant, v. SYSTEM AUTO PARKS, INC. (a Corporation) et al., Respondents.

Benjamin & Lieberman for Appellant.

O'Melveny & Myers, Jackson W. Chance, and Edward C. Freutel, Jr., for Respondents.

WILSON, J.—From a judgment dismissing the action following the sustaining without leave to amend of a demurrer to the second amended complaint, plaintiff appeals.

Plaintiff conducts a department store in downtown Los Angeles. Defendant operates downtown parking lots. Adjacent to plaintiff's store are two lots which are contiguous and of about equal size, one facing on Hill Street, owned by plaintiff, and the other facing on Broadway, of which defendants were in possession under a written lease expiring August 31, 1949. These lots will hereinafter be referred to as the Hill Street Lot and the Broadway Lot.

On July 26, 1946, plaintiff as lessor and defendant as lessee entered into a lease agreement whereby defendant leased the Hill Street Lot for a period of three years from October 1, 1946, for the purpose of operating a parking business thereon. Paragraph 17 of the lease[1] provides that contemporaneously with the execution of the Hill Street lease the parties are entering into an agreement whereby plaintiff will sublease from defendant a portion of the Broadway Lot for use as a show window; that it is the intention of the parties that the two agreements "shall go forward together" and that should plaintiff be deprived of its right to the show window for any reason it shall have the right to cancel the Hill Street lease; that should defendant lose its right to the Broadway Lot through no fault on its part it shall have the right to cancel the Hill Street lease.

The sublease for the show window was executed concurrently with the Hill Street lease and by its terms expired July 31, 1949.

On December 17, 1947, the parties executed a three year extension of the lease on the Hill Street Lot on the same

[1] "17. Contemporaneously herewith the parties hereto are entering into a certain lease agreement under the terms of which Eastern-Columbia, Inc. is leasing from System Auto Parks, Inc. for a period of three (3) years from September 1, 1946 a certain space 16 feet 6 inches long by 15 feet wide located at the southeasterly corner of the property municipally known as 845 South Broadway for use as a show window and for display purposes. It is the intent of the parties hereto that said lease agreement and this lease shall go forward together. And the parties hereto agree that if, for any reason other than fault on the part of Eastern-Columbia, Inc., it is legally deprived of its right to said show window under said lease agreement, that thereupon it, Lessor under this lease, or Lessee hereunder, shall have the right to cancel and terminate this lease upon ninety (90) days written notice to the other of its election so to do.

"Lessor and Lessee further agree that in the event the Lessee no longer has the right to the premises on Broadway now used by it as a parking lot, which premises are contiguous to and immediately East of the premises here demised, and it loses that right through no fault of its own, then Lessee may, at its option, terminate this lease upon sixty (60) days written notice of its intention so to terminate."

terms and conditions with the exception of paragraph 16 and 17 thereof, in lieu of which other provisions were substituted. The portion of the new provisions pertinent to this action are contained in paragraphs 5 and 6 of the extension of lease[2] and provide that in the event defendant enters into a new lease or a renewal or extension of its present lease on the Broadway Lot plaintiff shall have the right to renew its sublease for the show window; that defendant has executed a separate option agreement giving plaintiff the option of renewing its sublease on the Broadway Lot "in the event that lessee either execute a new lease or renew or extend its present lease"; that the option be incorporated into and made a part of the extension of lease; that plaintiff shall have the right to cancel the extension of lease if it "shall be legally deprived of its right to said show window under said sub-lease agreement, or any extension or renewal thereof . . ."; that defendant shall have the right to cancel the lease if it should no longer have the right to the premises on Broadway provided it lose that right through no fault on its part.

[2]"5. Lessee is presently Lessee of certain premises located at No. 845 South Broadway, Los Angeles, California, and, as such, has in turn sub-leased a portion of said premises to the Lessor of this Extension of Lease for use by it as a show window for display purposes. In the event that Lessee enter into a new lease for the leasing of the said premises at No. 845 South Broadway, or execute a renewal or an extension of its present lease on said premises at 845 South Broadway, then it here agrees that Lessor under this lease shall have the right to renew its sub-lease afore described, for the period of any new lease or extension or renewal of present lease obtained by Lessee on the said premises at No. 845 South Broadway; but, in no event shall such renewal of Lessor's sub-lease extend beyond July 31, 1952.

"Contemporaneously with this agreement, Lessee has executed a separate option agreement under the terms of which this Lessor is given the option to renew its sub-lease on the premises at 845 South Broadway in the event that Lessee either execute a new lease or renew or extend its present lease on the demised premises at 845 South Broadway, which option is incorporated into this Extension of Lease by reference and by such reference made a part hereof.

"Lessor and Lessee agree that if for any reason other than fault on its part Lessor herein shall be legally deprived of its right to said show window under said sub-lease agreement, or any extension or renewal thereof, that thereupon it, the Lessor hereunder, or the Lessee hereunder shall have the right to cancel or terminate this Extension of Lease by ninety (90) days written notice to the other of its election so to do.

"6. Lessor and Lessee further agree that in the event that Lessee no longer have the right to the premises on Broadway, now used by it as a parking lot, which premises are contiguous to and immediately east of the premises hereby demised, and it lose that right through no fault of its own, then Lessee may, at its option, terminate this lease upon sixty (60) days written notice of its intention so to terminate."

At the time the parties executed the extension of the lease on the Hill Street Lot, defendant, in consideration of such extension, gave plaintiff the option of renewing its show window sublease on the Broadway Lot for a period of three years upon the same terms and conditions as the original sublease. The option further provides that it is "conditioned on the provision that System . . . be in possession of the premises at 845 South Broadway and 844 South Hill Street . . . This option is to be for a period of time coextensive with that to be covered under a new lease and/or *or* any extension, renewal or renewals of its present master lease covering 845 South Broadway to and including July 31, 1952."

On August 15, 1949, defendant advised plaintiff in writing that its (defendant's) lease on the Broadway Lot would expire August 31, 1949, and that it would not extend or renew the lease upon its expiration but would surrender possession of the premises. Thereupon, on August 20, 1949, plaintiff served upon defendant, pursuant to the provisions of paragraph 5 of the extension of lease on the Hill Street Lot, a written notice of "Election to Cancel and Terminate Lease and Extension of Lease." Defendant having refused to surrender the premises, plaintiff filed this action for unlawful detainer.

Plaintiff contends that the four instruments, the 1946 Hill Street lease, the 1946 sublease on the Broadway Lot, the 1947 extension of the Hill Street lease and the 1947 option to extend the sublease must be read together; that the cancellation clause must be considered in relation to the four documents and when read with the whole transaction it means plaintiff may cancel the Hill Street lease if it should lose the show window on the Broadway Lot during the six year reciprocal lessor-lessee relationship; that the four instruments indicate a reciprocal relationship; that since defendant was given the right to cancel the Hill Street lease if it were not in possession of the Broadway Lot, and since the option expressly stated it was conditioned upon defendant's being in possession of both lots, it would be inconsistent for plaintiff not to have the right to cancel the Hill Street lease if defendant did not renew the Broadway lease; that if there is any inconsistency between the 1946 documents and the 1947 instruments or an inconsistency between the purpose of the 1947 option to extend the sublease and the 1947 extension of the Hill Street lease, parol evidence may

be introduced for the purpose of showing the intention of the parties.

If the language of the instrument is clear and explicit the intention of the parties must be ascertained from the writing alone. Parol evidence is admissible only where the language used is doubtful, uncertain or ambiguous and only then in cases where the doubt appears upon the face of the contract. (*Courtright* v. *Dimmick*, 22 Cal.App.2d 68, 71 [70 P.2d 269]; *Barnhart Aircraft, Inc.* v. *Preston*, 212 Cal. 19, 22 [297 P. 20]; *United Iron Works* v. *Outer Harbor Dock & Wharf Co.*, 168 Cal. 81 [141 P. 917].) Furthermore, as stated in the United Iron Works case, *supra*, at page 84, "the evidence is used to dispel that doubt, not by showing that the parties meant something other *than* what they said but by showing what they meant *by* what they said."

The provisions of paragraph 6 of the extension of lease containing the grounds upon which plaintiff may cancel the Hill Street lease are explicit. Plaintiff is given the right to cancel the lease if it is deprived of its right to the show window under the sublease agreement or any renewal or extension thereof. Plaintiff was not deprived of its right to the show window under the sublease agreement since it was in possession thereof until that agreement expired on July 31, 1949. Nor was it deprived of its rights under any extension or renewal of the sublease since there was no such extension or renewal. Neither the 1947 extension of lease nor the related option imposes any obligation upon defendant to renew or extend its Broadway lease. Upon the contrary, plaintiff's option to renew the sublease was *"in the event* that Lessee either execute a new lease or renew or extend its present lease" on the Broadway lot. There is no provision in either document giving plaintiff a right to terminate the Hill Street lease in the absence of such extension or renewal. Had the parties intended a reciprocal right of cancellation upon the part of plaintiff they could have so provided and to add any such language would be to rewrite the agreement.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.