[Civ. No. 22478.   Second Dist., Div. One.   Dec. 19, 1957.]

LELAND A. CROW et al., Respondents, v. P.E.G. CON-
STRUCTION COMPANY, INC. (a Corporation), et al.,
Defendants; EDEN MEMORIAL PARK ASSOCIA-
TION (a Corporation), Appellant.

I. B. Benjamin and James Coleman for Appellant.

William H. Brawner for Respondents.

WHITE, P. J.—By their complaint filed herein plaintiffs seek foreclosure of a mechanic's lien and for money allegedly due them. The pleading contains four causes of action, in the first of which it is alleged that on or about June 23, 1954, at the special instance and request of several defendants, including Whiting Construction Company (hereinafter referred to as Whiting), P.E.G. Construction Company (hereinafter referred to as P.E.G.) and Eden Park, plaintiff furnished certain work, labor, materials, machines and equipment for and used in the clearing, leveling, grading, tamping and improvement of land owned by Eden Park for subdivision and for cemetery purposes.

The complaint also alleged that plaintiff furnished all of the equipment and works of improvement on its part to be performed, that defendants agreed to pay upon completion of furnishing of said work the agreed sum of $5,947.83 but

nothing has been paid on account thereof. The complaint then alleges the filing and recordation of a notice of lien to secure the money allegedly due plaintiffs. The identical claim is alleged in common counts comprising the second, third and fourth causes of action.

Defendants Whiting, Eden Memorial Park Association (hereinafter referred to as Eden Park), and two individual defendants, who are officers respectively of Whiting and Eden, filed answers wherein it was alleged that plaintiff furnished the "equipment and improvements" to defendant P.E.G., and that on July 15, 1954, said answering defendant paid to plaintiff and defendant, P.E.G., the sum of $3,314.56 for and on account of said equipment and improvements and that plaintiffs executed in writing, a release from all claims covering amounts due for rental of equipment, transportation of same and all labor. The answer further alleged that the machines, equipment and labor furnished to defendant, P.E.G., after July 15, 1954, was in the sum of $600 and no more.

Concerning the factual background surrounding this litigation, the record reflects that Eden Park is a nonprofit association licensed as a cemetery authority. The president of Eden Park is the president of Whiting. The treasurer of Eden Park is the vice-president of Whiting. All of the outstanding shares of stock of Whiting are held by the president and vice-president. Whiting, as a general contractor, undertook the subcontracting and supervision of the work to be done for Eden Park, without fee.

On June 8, 1954, Whiting entered into an agreement in writing with P.E.G. whereby P.E.G. promised to do the site grading, excavating and street improvement work on the property owned by Eden Park and to furnish all necessary equipment, labor and material therefor. The agreement further provided for progress payments of 50 per cent of the work completed and a retention of 50 per cent until final acceptance by the city of Los Angeles.

Plaintiff had previously furnished P.E.G. with the type of equipment involved herein and through an oral arrangement with P.E.G. which was never fully explained, plaintiff commenced the work required in the contract between P.E.G. and Whiting on or about June 22, 1954.

There is in the record testimony given by defendant Alfred Lushing, Vice-President of Whiting and Treasurer of Eden Park, which testimony is uncontradicted, that on July 15,

1954, two representatives of defendant P.E.G. came to the office of the witness, to discuss ". . . the payment for the rough excavation work on the Eden Memorial Park job." That in answer to the request for payment on the contract because the rough work on the job was completed, the witness stated, "All right. We are willing to pay you. Give me a complete release from the people from whom you rented the equipment and the laborers used on the job and any material that you might have used." Plaintiff's company was telephoned and the witness Lushing had a conversation with a Mr. Philbert, plaintiff's superintendent, as follows:

"I said, 'Are you prepared to give a release to us for all equipment rentals, laborers, any material and so forth, that you furnished to P.E.G. Construction Company'.

"And he said, 'Providing that you make joint payment to P.E.G. and ourselves, I will give you such a release'.

"I said, 'All right. If you will get the release over here, we will give the P.E.G.—we will pay P.E.G. for all work performed up to date, providing that we have a full and complete release up to date.' "

A document bearing date of July 15, 1954, was then prepared by plaintiffs and delivered to Mr. Lushing. It reads as follows:

"July 15, 1954

"Whiting Construction Corporation,
450 South Beverly Drive,
Beverly Hills, California

Gentlemen:

"This is to certify that L. A. & R. S. Crow, a Partnership, hereby releases the Whiting Construction Corporation, from all claims covering amounts due for Rental of Equipment transportation of same and all Labor, said Equipment and Labor being used on the San Fernando job.

"It is further agreed that all checks issued in payment of all rough excavation work done on the San Fernando job by the P.E.G. Construction Company shall be made payable to the P.E.G. Construction Company and L. A. & R. S. Crow.

"Yours very truly
L. A. & R. S. Crow
By L. A. Crow
L. A. Crow Partner"

Upon receipt of this document, Mr. Lushing then referred to the contract with P.E.G. which provided stated sums for

the rough excavation work, totaled the amounts in the sum of $6,629.12 and in accordance with the contract paid 50 per cent of that amount. This he did by issuance of a check payable to P.E.G. Construction Company and plaintiffs L. A. and R. S. Crow, upon which was written the following notation: "Inv. $6,629.12 less 50% retention, $3,314.56; amount payable $3,314.56." The check bearing this exact description on its face, was then cashed by plaintiffs and P.E.G. Mr. Philbert of plaintiffs' firm and with whom Mr. Lushing had the foregoing conversation, was not produced as a witness. [1a] From a reading of the testimony of plaintiff Leland A. Crow it is manifest that plaintiffs' defense to the foregoing release was that it was customary for plaintiffs to bill P.E.G. at the end of each month for the work done or equipment furnished during such month. That when the release was executed July 15, 1954, no bill had been rendered for work done or equipment furnished during the month of July and consequently he regarded the release as given only "for the month of June, because we had the whole month of July coming on it, and hadn't billed it even yet. We were only thinking of the month of June to release. There was no bill out on July. There wouldn't have been a bill out until the end of the month." At the conclusion of the testimony the following occurred:

"THE COURT: The very man who could have helped the Court in giving testimony as to what happened at the time this release was executed was not produced, so the Court would have to assume, if he came, that his testimony would be adverse.

"MR. BENJAMIN (attorney for defendant Eden Park): That is right.

"THE COURT: It looks to the Court as if you were afraid to produce him because he might testify against you.

"MR. BENJAMIN: And our evidence is verified by the check, the way it was written out, to show just exactly what we intended to do.

"THE COURT: The matter will be submitted. I am not satisfied at all with the evidence, and if you don't produce the evidence, I can't give you judgment. Why wasn't he produced here?

"MR. BRAWNER: Who?

"THE COURT: The man who negotiated the release.

"MR. BRAWNER: You mean Mr. Philbert (plaintiff's Superintendent)?

"THE COURT: Yes.

"MR. BRAWNER: He is running a job up in San Francisco and moved up there, and he is awful busy.

"THE COURT: You could have taken his deposition.

"All right. It will be submitted."

Thereafter the court found: "That it is true that the purported release . . . is genuine and was duly executed. That there was no meeting of the minds of the parties to said document; said document was without consideration and is of no force and effect (sic)."

Thereafter judgment was rendered, and so far as here pertinent reads as follows:

"I

"The plaintiff L.A. & R.S. Crow, a copartnership, do have and recover from the defendants P.E.G. Construction Company, a copartnership, and from Leonard E. Herron, Carl L. Reynolds and Wesley Smith, the sum of $5,947.83, together with interest thereon at the rate of 7% per annum from date of July 31, 1954, together with the sum of $3.10 paid for verifying and recording their claim of lien, together with the sum of $1.20 paid for filing their Notice of Lis Pendens, together with costs of suit taxed in the sum of *$147.06*.

"II

"That the plaintiff L.A. & R.S. Crow, a copartnership, are entitled to a lien upon the hereinafter described real property, upon the interest of defendant EDEN MEMORIAL PARK ASSO-CIATION, a California corporation, in the sum of $5,947.83, together with interest thereon at the rate of 7 per cent per annum from date of July 31, 1954, together with the sum of $3.10 paid for verifying and recording their claim of lien, together with the sum of $1.20 paid for filing their Notice of Lis Pendens, together with costs of suit taxed in the sum of *$147.06*.

"III

"That the interest of EDEN MEMORIAL PARK ASSOCIATION, a California corporation, in the property mentioned in the Complaint and hereinafter described, or as much thereof as may be necessary to sell, be sold at public auction in the manner prescribed by law, by the Sheriff of Los Angeles County, California, where said property is situated . . ."

Defendant Eden Park alone appeals from the last two paragraphs of said judgment. No brief has been filed by respondents.

■ Appellant's first ground of appeal is that the court erred in basing in part its judgment on the finding that there was no consideration for the release of July 15, 1954. We find ourselves in accord with appellant's contention. ■ Since the adoption of Civil Code, section 1541, it has uniformly been held that where the writing is plain and explicit and given for the express purpose of effecting a complete release of the obligation, a consideration is not necessary (*W. R. Campbell Co.* v. *Sears, Roebuck & Co.*, 136 Cal.App. 765, 769 [29 P.2d 910] ; *Marshall* v. *Packard Bell Co.*, 106 Cal.App. 2d 770, 775 [236 P.2d 201] ; *Weddle* v. *Heath*, 211 Cal. 445, 455 [295 P. 832] ; *Rogers* v. *Rogers*, 49 Cal.App.2d 366, 369 [121 P.2d 819] ).

Appellant next contends that application of the correct rules governing the interpretation of contracts negatives the court's finding that there was no meeting of the minds of the parties to the contract now before us. There can be no doubt that the document dated July 15, 1954, states it was a release ". . . from *all claims* covering amounts due . . . on the San Fernando Job" (emphasis added), that a check in the exact amount of $3,314.56 was issued in exchange for the release, and was cashed by plaintiffs. When the language of a contract is clear and explicit and is reduced to writing, the language of the contract governs its interpretation, and the intention of the parties is to be ascertained from the writing alone (Civ. Code, §§ 1639, 1640).

■ In *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13], we find the following: "As the Court said in *Payne* v. *Commercial National Bank*, 177 Cal. 68, 72 [169 P. 1007, L.R.A. 1918C 328] : '. . . no authority sustains the proposition that under the guise of construction or explanation, a meaning can be given to the instrument which is not to be found in the instrument itself, but is based entirely upon direct evidence of intention independent of the instrument.' (See also to the same effect, *Barnhart Aircraft, Inc.* v. *Preston*, 212 Cal. 19 [297 P. 20] ; *Fraters G. & P. Co.* v. *Southwestern Construction Co.*, 200 Cal. 688 [254 P. 1097].) "

■ While there are cases concerned with equivocal acts, such as handing over a deed to a grantee, wherein it was held that the grantor may testify as to his intent not to make a legal delivery (*Howell* v. *Mays*, 107 Cal.App. 751 [290 P. 898]), there is, however, a fundamental distinction between cases wherein the act is equivocal and evidence of the intent of the party is competent and relevant to establish its legal

effect, and those cases where the *terms* of an agreement are set forth in writing and the words are not equivocal or ambiguous. In the latter cases, as was said in *Brant* v. *California Dairies, Inc., supra,* p. 134: ". . . the writing or writings will constitute the contract of the parties, and one party is not permitted to escape from its obligation by showing that he did not intend to do what his words bound him to do." ▇ In other words, when the language of a contract is plain and unambiguous it is not within the province of a court to rewrite or alter by construction what has been agreed upon (*Jones* v. *Pollock,* 34 Cal.2d 863, 866 [215 P.2d 733]; *Sass* v. *Hank,* 108 Cal.App.2d 207, 211 [238 P.2d 652]). The function of a judge in the construction of an instrument is set forth in section 1858 of the Code of Civil Procedure, and the method of discharging that function is contained in sections 1643 and 1654 of the Civil Code. ▇ It is only in those cases where upon the face of the written contract itself there is doubt that resort may be had to the surrounding circumstances to dispel such doubt, not by showing that the parties meant something other than what they said but by showing what they meant by what they said (*United Iron Works* v. *Outer Harbor Dock etc. Co.,* 168 Cal. 81, 84 [141 P. 917]; *Purdy* v. *Buffums, Inc.,* 95 Cal.App. 299, 303 [272 P. 770]; *Sass* v. *Hanks, supra,* p. 214).

▇ In construing a contract, the question whether an uncertainty or ambiguity exists is one of law, and the finding of the lower court on this issue is not binding on appeal (*Brant* v. *California Dairies, Inc., supra*).

The release here in question was drawn by respondents in their office. It is so clear and unequivocal in its terms that no resort to the circumstances surrounding its execution is necessary to ascertain the intention of the parties. Respondents seek to evade the result of its plain terms by testimony that they intended that the release dated July 15, 1954 was for the month of June only, but in arriving at one's intentions, courts cannot be guided by an unexpressed state of mind (*Caravan* v. *College of Osteopathic Physicians,* 73 Cal.App.2d 511, 519 [166 P.2d 878]). ▇ An unbroken line of decisions have given approval to the rule governing construction of contracts, first announced in *Zurich etc. Assurance Co.* v. *Industrial Acc. Com.,* 132 Cal.App. 101, 103 [22 P.2d 572], as follows:

". . . the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It

judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on that subject.''

▆▆▆ We are persuaded that the evidence in the case now engaging our attention does not sustain the findings that the release was invalid for the reason that there was no consideration for that document, because as heretofore pointed out, no consideration was necessary and that the evidence is equally insufficient to sustain the finding that there was no meeting of the minds of the parties, based as it is upon parol evidence which as above stated was inadmissible.

The portions of the judgment from which this appeal was taken, are reversed.

Fourt, J., and Drapeau, J.,* concurred.

*Assigned by Chairman of Judicial Council.