**In re CREED TAYLOR, INC.,
Debtor-in-Possession.**

**SEAWIND, a California Partnership,
Plaintiff,**

**v.**

**CREED TAYLOR, INC. and CBS
Records, a division of CBS, Inc.,
Defendants.**

**Bankruptcy No. 78 B 2172.**

United States Bankruptcy Court,
S. D. New York.

April 10, 1981.

Ballon, Stoll & Itzler, New York City, for debtor.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for Seawind.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

This post confirmation adversary proceeding by Seawind, a musical recording group, against Creed Taylor, Inc. (CTI) asks this court to determine whether a default on a prepetition licensing agreement, which occurred during the Chapter XI proceeding, terminated any claim which the debtor-in-possession may have had to the property at issue. After reviewing the history of the relationship between these parties, the transcript of the hearing held on December 30, 1980 and the relevant law, this Court concludes that the terms of the contract control and that Seawind has a right to immediate possession of the "master recordings."

In 1976 and 1977 Seawind was under an exclusive licensing agreement with CTI for the manufacture and distribution of certain recordings in exchange for royalty payments. Additionally there were other agreements called publishing contracts. CTI allegedly breached each of these contracts by failing to pay the required royalties and publishing revenues, and by failing to fulfill other contractual obligations. The stormy relationship between the parties resulted in law suits brought in Los Angeles and New York counties in mid 1978.

Efforts to resolve their differences culminated in the thoroughly negotiated Settlement Agreement of 1978 (Settlement) which is governed by California law (para. 18.1). This Settlement discontinued the pending litigation, and established a new relationship between the parties, terminating the 1976 and 1977 agreements, except to the extent specifically incorporated in the Settlement.

The goal of the Settlement, as stated in paragraph 2.5, was "to ensure timely payment to Seawind of all royalties and publishing revenues earned and payable and to insulate future sales of Seawind records from any financial problems CTI may have in the future." To this end, CTI agreed that Seawind should have a security interest in certain "master recordings" which master tapes are the subject of this controversy.

Paragraph 10 the Settlement provided that failure by CTI to furnish timely accountings or failure to make timely payments to Seawind automatically triggered the default and termination clauses, that such failure constituted material default, and such default vested in Seawind the sole right, title and interest in the aforementioned "master recordings." Paragraph 10 further stipulates as an event of default the adjudication of CTI as a bankrupt or the making by CTI of an assignment for the benefit of creditors. On December 8, 1978 CTI filed a petition for an arrangement with this Court under Chapter XI of the Bankruptcy Act.

In or about January 1979, Seawind gave CTI written notice of default for failure to render the accountings or to make the payments required under the Settlement and demanded the "master recordings." CTI refused to comply. Moreover, in February 1980 CTI entered into an agreement with CBS Records to transfer to CBS these Seawind "master recordings" as part of a larger package. This attempted transfer without prior notice was in direct violation of paragraph 8 of the Settlement which gives Seawind an option to purchase.

Seawind contends that CTI's default results in the termination of any right, title or interest in the "master recordings" by CTI, that the confession of judgment contained in the Settlement vested possession of the tapes in Seawind, and that CTI has no interest it can assign to CBS. Seawind has moved for summary judgment pursuant to Bankruptcy Rule 756 and Rule 56(a) of the Federal Rules of Civil Procedure.

In its papers CTI admits its failure to furnish timely accountings and its filing of the Chapter XI petition are incidents of breach of its contract with Seawind, but argues that no damages whatsoever resulted to the plaintiff and asserts that the penalty for breach that Seawind seeks to impose will result in extensive economic damage to it. CTI asks the Court to exercise its equity powers in making a determination in its favor.

At issue is whether the Settlement is an executory contract and if so, whether CTI assumed the contract. The plan for an arrangement, confirmed on January 4, 1981, provided for retention of jurisdiction by this Court pursuant to Section 368 of the Bankruptcy Act for the purposes set forth in Section 387 and Rule 11–40, and to determine applications for the rejection or disaffirmance of executory contracts.

Under the plan, CTI assumed those contracts it did not reject. As stated in Article III,

"Executory contracts of the Debtor which have not been expressly rejected and disaffirmed or are not the subject of an application made therefor prior to confirmation shall be uneffected by this Chapter XI case and this arrangement."

It is a well known principle under Chapter XI of the Bankruptcy Act that a debtor-in-possession has the same rights and powers as a trustee, § 70(a). See also *Texaco Consumer Finance Corp. v. First National City Bank*, 365 F.Supp. 427, 429 (S.D.N.Y.1973). Further, such debtor-in-possession inherits the same interest in property that the debtor had when by authority of § 70(b) of the Bankruptcy Act the debtor-in-possession assumes an executory contract of the debtor. *In re Schokbeton Industries, Inc.*, 349 F.Supp. 1351, 1358 (E.D.Tex.1971). Therefore CTI as debtor-in-possession acquired no greater right in the licensing contract than it had prior to the filing. More importantly, in assuming the contract CTI assumed its burdens, including the obligations, to render accountings and to pay royalties when due as well as its benefits.

In the alternative, if this is not an executory contract because of the personal nature of certain licensing agreements, then full accord should be given to the termination clause of the Settlement in order to protect the licensor, Seawind. In a similar case, *In re Little and Ives Co.*, 262 F.Supp. 719 (S.D.N.Y.1966) the trustee sold his right, title and interest in two licensing agreements despite contract provisions which prohibited assignment and permitted

termination in the event of insolvency or bankruptcy proceedings by the licensee. The Court held the trustee acquired no interest in the contract rights or tangible material produced thereunder. Recognizing the need to protect both quality of the product and the licensor's name, the Court said, "We find most compelling the sound reason which prompts upholding the validity of an expressed and unambiguous termination provision in a contractual relationship such as confronts us here." *Id.* at 723.

CTI contends that it owes no money whatsoever to Seawind. It argues that by itself failure to render accountings is too insignificant an act to result in default. Far from being insignificant, such failure is central to Seawind's argument. There is no possible way for Seawind to determine if there are any damages without such an accounting and it is precisely this failure of delivery of such essential information that led to the Settlement with its express assertion that such failure constitutes material default. It is by no slight of pen that the Settlement demands strict satisfaction from CTI on just this issue.

Under ordinary principles of contract law, it is well established that persons who agree as a result of arm's length bargaining are held to the terms of their agreements. By its own terms, the Settlement is governed by the law of California. Section 1638 of the California Civil Code expressly states that if the language of a contract is clear and explicit, that language governs the interpretation of the contract. When parties have openly and fairly entered into an unambiguous contract, the courts will not rewrite it in the guise of interpretation. See *Crow v. PEG Const. Co.*, 156 Cal.App.2d 271, 319 P.2d 47 (1962); *Greenberg v. Continental Casualty Co.*, 24 Cal.App.2d 506, 75 P.2d 644 (1938).

There is no doubt that the default clause of the Settlement was won through negotiations between parties of equal bargaining strength, and that the provision making CTI's failure to render accountings an event of default was not simply inciden-

tal to the contract, but the backbone of that Settlement. This is evidenced by the fact that this is termed a *material* default thereunder.

The default provision should not be disregarded or treated lightly. It was the express intent of the parties that the Settlement should protect Seawind from just such failure by CTI to perform its obligations that led to the granting of a security interest in the first place and to the vesting of rights to the "master recordings" in Seawind.

As stated earlier, the burdens of the license accompanied its benefits. The obligation of the debtor-in-possession to furnish the rendering of accounts and payments of amounts due is the same obligation that the debtor had. Such accounts and payments have never been furnished the plaintiff and were necessary obligations to be performed by the debtor-in-possession to prevent termination of the contract by the plaintiff and the results contracted for thereunder. That Seawind did not perfect its security interest until after CTI filed its petition in Chapter XI is of no consequence in light of CTI's failure to perform.

The Settlement granted Seawind the immediate possession of the "master recordings" through a confession of judgment by CTI regardless of the enforceability of the security interest while CTI still had title to the tapes, or the validity of any prior rights which CTI may have had.

Finally, CTI's attempt to transfer the "master recordings" to CBS or anyone else deprives Seawind of its option to purchase. By its action, CTI is attempting to benefit under a contract without performing its necessary obligations. More importantly, CBS Records has repeatedly acknowledged to the Court that its agreement with CTI would in no way be affected by the exclusion of the Seawind "master recordings" and CTI would go unharmed. In his Reply Memorandum of Law in Support of Motion for Summary Judgment, the plaintiff states,

"CBS has no material interest in the "master recordings" and no objection to their return by CTI to Seawind. Further [the attorney for CBS] has confirmed that CTI's agreement with CBS would in no way be affected by the exclusion of the "master recordings" therefrom." (p. 11).

CTI has not denied this in their papers or in open court. From the above review of the evidence before this Court, it is clear that there is no "genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law" as required under Rule 56 Federal Rules of Civil Procedure for the granting of summary judgment. Because of its default, CTI has no interest remaining in the "master recordings". It contracted away any interest it may have had by the clearly negotiated Settlement. Therefore, this Court grants Seawind's motion for summary judgment and finds that CTI's default resulted in all right, title and interest in the "master recordings" vesting in Seawind at the time of its demand since there was no provision for curing this kind of default. The Court directs CTI to immediately turn over the "master recordings" to Seawind as it has no further interest in them, and enjoins CTI from further exploiting these recordings in any manner whatsoever.

It is so ordered.